*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LARLEE COHEN,

        Plaintiff-Appellant,

v

LIZZIE LOUISE COHEN,

        Defendant-Appellee.

UNPUBLISHED
September 16, 2025
9:49 AM

No. 370312
Wayne Circuit Court
LC No. 06-619689-DO

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

PER CURIAM.

Plaintiff appeals by leave granted[1] the trial court's order requiring him to pay $38,000 in spousal support. We affirm.

## I. FACTUAL BACKGROUND

The parties divorced in 2007 pursuant to a consent judgment of divorce that required plaintiff to pay $1,000 per month in spousal support until the occurrence of certain events, including plaintiff's retirement from his then-current employment at Ford Motor Company. On October 5, 2020, plaintiff ceased working due to a medical disability and was placed on a no work medical leave. Since that time, plaintiff states he has not returned to work in any capacity and his only income consists of Social Security Disability benefits, while defendant has already begun receiving her portion of his pension under the consent judgment.

In June of 2023, defendant moved to enforce the spousal support provision and collect arrearages. Plaintiff responded in a countermotion asserting that his obligation should have terminated upon his permanent withdrawal from the workforce in 2020, which he contended satisfied the retirement condition set forth in the consent judgment. A hearing was held on March 13, 2024, during which plaintiff testified about his employment status and income. Plaintiff

---

[1] *Cohen v Cohen*, unpublished order of the Court of Appeals, entered August 26, 2024 (Docket No. 370312).

testified that he entered his request to retire on March 1, 2024, and has yet to receive any documentation. The trial court concluded plaintiff had not satisfied the retirement condition in the consent judgment, and owes defendant $38,000 in spousal support.

## II. ANALYSIS

Plaintiff argues that because he ceased working due to a medical disability and was placed on a no work medical leave he was retired within the meaning of the consent judgment on October 5, 2020.

## A. STANDARD OF REVIEW

"A consent judgment is in the nature of a contract, and is to be construed and applied as such." *Laffin v Laffin*, 280 Mich App 513, 517; 760 NW2d 738 (2008). The proper interpretation of a contract is a question of law that we review de novo. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). The same standard applies to the question of whether an ambiguity exists. *Atlantic Cas Ins Co v Gustafson*, 315 Mich App 533, 536; 891 NW2d 499 (2016).

## B. INTERPRETATION OF THE CONSENT JUDGMENT

Plaintiff argues that he retired under the meaning of the consent judgment when he permanently left the workforce in 2020 due to a medical disability. He emphasizes that the agreement does not define "retire" or require submission of paperwork or the initiation of pension benefits. In his view, the term should be given its plain and ordinary meaning, which includes the permanent cessation of employment. Because he has not returned to work since 2020, plaintiff maintains that he satisfied the retirement condition without needing to take any further formal steps.

Defendant asserts that plaintiff did not retire until 2024, when he submitted paperwork to Ford to begin the process of receiving pension benefits. She relies on the pension clause of the consent judgment and argues that retirement requires more than simply leaving the workforce; it also requires formal action to trigger pension eligibility.

Two provisions in the consent judgment pertain to retirement, one being the alimony clause, which states in part:

> IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff, LARLEE COHEN, shall pay to the Defendant, LIZZIE LOUISE COHEN, as non-modifiable spousal support, the sum of $1,000.00 per month commencing upon the entry on the Consent Judgment of Divorce and continuing until the Defendant's death or remarriage or until the Plaintiff retired from his current employment, at which time, spousal support to the Defendant shall terminated [sic] (retroactive to the date of retirement, if applicable) and thereafter be forever barred.

The second is the pension provision/Qualified Domestic Relations Order (QDRO) clause, which states in part:

The Alternate Payee [Defendant] may elect benefits any time after Participant [Plaintiff] is eligible to retire even though the Participant has not retired at the time of the Alternate Payee's election.

\* \* \*

By way of illustration and not by way of limitation, the Plaintiff shall continue to designate the Defendant only (and none other) as his pre-retirement surviving spouse, shall not elect to retire, shall not select a retirement payment option, or take any other action which would diminish or deprive Defendant as the Alternate Payee of her assigned benefits as agreed and intended to be assigned to her under the Plan described above.

Courts must enforce the agreement according to its plain and unambiguous language as written, and may not rewrite the agreement under the guise of interpretation. The contract must be read as a whole and given its ordinary meaning. See *Burkhardt v Bailey*, 260 Mich App 636, 656-657; 680 NW2d 453 (2004); *Village of Edmore v Crystal Automation Sys Inc*, 322 Mich App 244, 262; 911 NW2d 241 (2017). Reading both the alimony and pension/QDRO clauses together, the parties' intent when entering into the contract was clear: In order for plaintiff to have retired for purposes of the consent judgment, he had to formally elect to retire from Ford Motor Company.

According to the alimony clause, spousal support terminates upon death or when plaintiff retires from his current employment, which was with Ford Motor Company. The QDRO clause further reinforces that the term "retirement" in the consent judgment is tied to initiating retirement with Ford. That clause recognizes that defendant may elect benefits any time after plaintiff is eligible to retire even if he is not retired at that time, establishing a clear distinction between eligibility and the act of retirement. It further prohibits plaintiff from *electing* to retire, *electing* a retirement payment option, or taking any other action that would diminish defendant's assigned benefits. These provisions collectively demonstrate that "retirement" under the agreement was not tied to plaintiff's subjective belief as to his employment status, but rather to the completion of specific steps taken with plaintiff's current employer, which plaintiff did not take until March of 2024. When analyzed together, the alimony and QDRO provisions make clear that plaintiff was not retired when he claimed to be in 2020.

Plaintiff's argument to the contrary is unpersuasive because it relies almost exclusively on a general dictionary definition of "retirement," rather than the specific language and context of the consent judgment. While a dictionary may provide a relevant understanding of an undefined term, courts are required to interpret contractual provisions within the context of the entire agreement. Here, plaintiff attempts to equate retirement with merely ceasing work or being placed on medical leave, but this interpretation overlooks the surrounding clauses that reference formal retirement from his current employer, and the specific steps that were required to do so. Plaintiff's reliance on the dictionary strips the term "retirement" of its contractual meaning. He asks the Court to disregard the consent judgment's plain terms in favor of a definition that has no operative meaning within this context.

C. CONCLUSION

The trial court properly interpreted and enforced the consent judgment as written. Retirement for purposes of the consent judgment requires more than a mere cessation of work or placement on medical leave; it requires affirmative steps to elect to retire from a specific employer. Plaintiff remained on medical leave from Ford and did not formally retire until 2024, when he submitted paperwork to initiate the retirement process. Thus, the trial court's ruling was consistent with the plain language and intent of the consent judgment.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Daniel S. Korobkin